# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

**Shelter Mutual Insurance Company**
a/s/o Freddie and Amber Hoard

    *Plaintiff,*

      v.                                  Jury Trial Demanded

**Bissell Homecare, Inc.**;
**Bissell, Inc.**;
**Flextronics International USA, Inc.**;
**LG Chem America, Inc.**;

    *Defendants.*

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Shelter Mutual Insurance Company brings this lawsuit timely against Defendant Bissell Homecare, Inc., Bissell, Inc., Flextronics International USA, Inc., and LG Chem America, Inc., and alleges the following:

### PARTIES

1. Plaintiff Shelter Mutual Insurance Company ("Shelter") is a Missouri corporation with its principal place of business in Missouri. Shelter-insureds Freddie and Amber Hoard are Tennessee citizens.

2. Defendant Bissell Homecare, Inc. is a Michigan corporation with its principal place of business at 2345 Walker Avenue NW, Grand Rapids, Michigan 49544. At all times relevant to this lawsuit, Bissell Homecare, Inc. ("Bissell Homecare") has been a direct marketer and distributor of home care products, authorized to transact business in the State of Tennessee. Bissell Homecare, Inc. may be served via its Registered Agent for Service of Process Cogency Global Inc., 992 Davidson Drive, Suite B, Nashville, Tennessee 37205.

3. Defendant Bissell, Inc. is a Michigan corporation with its principal place of business at 2345 Walker Avenue NW, Grand Rapids, Michigan 49544. At all times relevant to this lawsuit, Bissell, Inc. ("Bissell") has been a direct marketer and distributor of home care products.

Bissell, Inc. may be served via its Registered Agent for Service of Process Michael D. Sukenik, 2345 Walker Avenue NW, Grand Rapids, Michigan 49544.

4. Defendant Flextronics International USA, Inc. ("Flextronics") is a California corporation with its principal place of business at 6201 America Center Drive, San Jose, California 95002. At all times relevant to this lawsuit, Flextronics provides post-manufacturing supply chain logistics services. Upon information and belief, Flextronics directly purchased LG Chemical (MH19896) Model INR18650MG1 lithium ion cells ("Lithium Ion Batteries") and assembled vacuums for Bissell Homecare, Inc. and Bissell, Inc. for the purpose of providing electronic products to United States-based customers and by United States end-users, including in the State of Tennessee. Flextronics International USA, Inc. may be served via its Registered Agent for Service of Process CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37929.

5. Upon information and belief, a South Korean Company by the name of LG Chem, LTD. ("LG Chem") is the entity that manufactured the subject Lithium Ion Battery that caused the fire that damaged Freddie and Amber Hoard real and personal property.

6. LG Chem, LTD. ("LG Chem") is not subject to the jurisdiction of this Court in that LG Chem is not subject to service in Tennessee nor can service be secured over LG Chem via Tennessee's long-arm statute.

7. Defendant LG Chem America, Inc. ("LG Chem America") is a business organized under the laws of Delaware with its principal place of business at 910 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. LG Chem America is a wholly-owned subsidiary of LG Chem. At all times relevant to this lawsuit, LG Chem America, either directly or through its wholly-owned subsidiaries, designed, tested, manufactured, advertised, sold, and/or distributed Lithium Ion Batteries throughout the United States, and directly caused Lithium Ion Batteries to be imported into the United States, including Tennessee. LG Chem America, Inc. may be served via its Registered Agent for Service of Process Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

2

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction over this lawsuit because the parties are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

9.  Defendants, through their actions and those of any affiliated/parent/subsidiary companies and agents, do and did at all times relevant conduct substantial business in Tennessee by purposefully causing their products, including the Bissell Bolt Lithium Pet Cordless Bagless Stick Vacuum and Lithium Ion Batteries, to be marketed, distributed, sold and used within Tennessee.

10. Defendants, do and did at all times relevant, derive significant revenue from its activities and the sale/use of their products in Tennessee.

11. Defendants, have additionally caused Shelter-insureds Freddie and Amber Hoard, citizens of Tennessee, to suffer damage to real and personal property as a result of at least one tortious act or omission.

12. Thus, through their actions, Defendants do or should reasonably anticipate being hailed into a Tennessee court and have thereby consented specifically to the jurisdiction of this Court. Defendants are thus subject to personal jurisdiction in this Court pursuant to T.C.A. §§ 20-2-214, 20-2-223 and 20-2-225.

13. Venue is proper in this district and division because this cause of action arose in Clarksville, Montgomery County, Tennessee. *See* 28 U.S.C. § 1391(a)(2).

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

14. At all material times, Freddie and Amber Hoard owned the real and personal property at 536 Belmont Road in Clarksville, Montgomery County, Tennessee.

15. On or about November 21, 2017, the Bissell Bolt Lithium Pet Cordless Bagless Stick Vacuum, Item number 808126, Model number 19542 (the "Bissell Vacuum") catastrophically failed, causing a fire and burning down the Shelter-insureds' house ("The Fire").

3

16.     Upon information and belief, the batteries that are specified for the Bissell Vacuum product are identified as LG Chemical (MH19896) Model INR18650MG1 lithium ion cells ("Lithium Ion Battery").

17.     The Lithium Ion Batteries that are used in the Bissell Vacuum are subject to risk of an event known as thermal runaway, whereby the internal battery temperature can increase to a point causing the battery to ignite and/or explode, due to defective design and/or manufacture, including the use of low-quality materials.

18.     Upon information and belief, according to NASA in 2005, "lithium-ion batteries are used widely in portable electronic equipment [but with] the increased power demands from portable electronic equipment, the batteries have increased in energy and power with almost no changes in dimension, consequently increasing the hazards associated with high-energy systems."

19.     Upon information and belief, no later than October of 2014, all Defendants received notice of concern about lithium ion batteries similar to the subject Lithium Ion Battery herein, not only from consumers but also from the Federal Emergency Management Agency (FEMA), the United States Fire Administration (USFA), the Federal Aviation Administration (FAA), and from Underwriters Laboratories (UL) regarding the propensity of such batteries to spontaneously and without warning overheat, catch fire and continue burning during normal and foreseeable operating conditions, including being used in conjunction with a Bissell Vacuum.

20.     Upon information and belief, following Defendant LG Chem's first sale of lithium ion batteries similar to the Lithium Ion Battery, Defendant LG Chem received notice that lithium ion batteries were causing injuries to persons and property after spontaneously and without warning overheating, catching fire and burning. Said notices continued to accumulate over time such that Defendant LG Chem did know, or should have known, of the dangerous propensity posed by the Lithium Ion Battery prior to the time of its sale to Shelter-insureds.

21.     Upon information and belief, following Defendants Bissell Homecare's and Bissell's first sale of vacuums similar to the Bissell Vacuum, Defendants Bissell Homecare and Bissell received notice that lithium ion batteries similar to the subject battery, when used in

4

conjunction with vacuum's like the subject Bissell Vacuum herein, were causing injuries to persons and property after spontaneously and without warning overheating, catching fire and burning. Said notices continued to accumulate over time such that Defendants Bissell Homecare and Bissell did know, or should have known, of the dangerous propensity posed by the Lithium Ion Battery and the subject Bissell Vacuum at the time of the sale of the subject Bissell Vacuum, or, in any event, prior to the subject incident.

22.   Upon information and belief, following Defendant Flextronics' first sale of both lithium ion batteries similar to the subject Lithium Ion Battery herein, and vacuums similar to the subject Bissell Vacuum herein, Defendant Flextronics received notice that lithium ion batteries similar to the subject Lithium Ion Battery herein, when used in conjunction with vacuum's like the subject Bissell Vacuum herein, were causing injuries to persons and property after spontaneously and without warning overheating, catching fire and burning. Said notices continued to accumulate over time such that Defendant Flextronics did know, or should have known, of the dangerous propensity posed by both the subject Lithium Ion Battery and the subject Bissell Vacuum at the time of the sale of the Bissell Vacuum, or, in any event, prior to the subject incident.

23.   On or around October 19, 2017, Freddie Hoard purchased the Bissell Vacuum from a Lowe's location in Clarksville, Montgomery County, Tennessee.

24.   Defendants Bissell Homecare, Bissell, and Flextronics exercised substantial control over the assembly, packaging and labeling of the Bissell Vacuum.

25.   Defendants Bissell Homecare, Bissell, Flextronics, and LG Chem America knew, or should have known, about the hazardous dangers associated with malfunctions of lithium batteries being used in conjunction with vacuums.

26.   The Bissell Vacuum is a tangible object or good produced.

27.   The Bissell Vacuum is a "product," as that term is defined by section 29-28-102(5) of the Tennessee Code, and Shelter-insureds, at all times, used the Bissell Vacuum in a reasonably foreseeable manner and for an intended purpose.

28.   At the time of the incident, Freddie and Amber Hoard had a valid and enforceable property insurance policy with Shelter.

29. To the extent of its payments to Freddie and Amber Hoard for damages caused by the fire, Shelter is legally and equitably subrogated to Freddie and Amber Hoard's rights and claims for those damages.

## COUNT 1 – STRICT LIABILITY
## DEFENDANT - LG CHEM AMERICA, INC.

30. Plaintiff adopts and re-alleges the foregoing paragraphs of this Complaint, as if fully set forth herein

31. Upon information and belief, LG Chem, Ltd. is the manufacturer of the Lithium Ion Battery.

32. LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a product liability action from being commenced against Defendant LG Chem America, even to the extent Defendant LG Chem America did not play any role in the design or manufacture of the Lithium Ion Battery.

33. Additionally, Defendant LG Chem America is familiar with lithium ion batteries such that it cannot be said that Defendant LG Chem America is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition; as such, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a products liability action as to the Lithium Ion Battery from being commenced against Defendant LG Chem America.

34. In the ordinary course of business, the Lithium Ion Battery was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce such that it reached the State of Tennessee by the acts of Defendant LG Chem America.

35. At the time of The Fire, the Lithium Ion Battery was used in a manner reasonable anticipated by Defendant LG Chem America.

36. At the time of The Fire, the Lithium Ion Battery was without substantial change in the condition in which it was designed, manufactured, tested, inspected, assembled, distributed, sold and/or placed into the stream of commerce by Defendant LG Chem America.

37. At the time of The Fire, the Lithium Ion Battery was in substantially the same condition as when it left the control of Defendant LG Chem America, except for reasonably anticipated wear and tear.

38. The Lithium Ion Battery, when used in the manner recommended, intended and/or reasonably foreseeable to Defendant LG Chem America, was "defective" and "unreasonably dangerous" — as those terms are defined by sections §§ 29-28-201(2) and (8) of the Tennessee Code — in one or more of the following respects:

   a) The Lithium Ion Battery was designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition in that the Lithium Ion Battery had a propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions;

   b) The Lithium Ion Battery was unreasonably dangerous and defective due to inadequate warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Lithium Ion Battery (especially within a Bissell Vacuum); and,

   c) The Lithium Ion Battery was unreasonably dangerous and defective due to the absence of warnings and/or instructions, including but not limited to warning stickers placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Lithium Ion Battery (especially in combination within a Bissell Vacuum).

39. Defendant LG Chem America knew that the Lithium Ion Battery would be used without inspection for defective or unreasonably dangerous conditions and represented that the Lithium Ion Battery could be safely used and would be fit for the ordinary purposes for which it was intended.

40. Defendant LG Chem America knew that the end consumers of the Lithium Ion Battery would not and could not properly inspect the Lithium Ion Battery for defects and dangerous conditions because detection of such defects and dangers would be beyond the capabilities of ordinary consumers.

41. On the date of The Fire, the Lithium Ion Battery was within its "anticipated life" as defined by section § 29-28-102(1) of the Tennessee Code.

7

42. Technologically and commercially feasible safer alternative designs and methods of supplying battery-powered electricity existed for the Lithium Ion Battery, which would have eliminated its unreasonably dangerous characteristics and propensities without seriously impairing its usefulness.

43. The Lithium Ion Battery did not meet reasonable expectations of safety, failed to meet the "Consumer Expectation Test" as that term is understood under Tennessee law, and was not reasonably fit for the purposes for which it would foreseeably be used.

44. A reasonably prudent manufacturer or seller would not have put the Lithium Ion Battery on the market due to its defective, unsafe and unreasonably dangerous condition.

45. Had the Lithium Ion Battery not possessed the defects and unreasonably dangerous characteristics and propensities described above, the likelihood of The Fire, and the damages resulting therefrom, would have either been eliminated or the and damages would have been less numerous, less likely, or less severe.

46. As a direct and proximate result of the defective and unreasonably dangerous condition of the Lithium Ion Battery, Shelter-insureds suffered real and personal property damage.

47. Defendant LG Chem America's conduct was performed maliciously, intentionally, fraudulently, and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant LG Chem America and others from like conduct in the future.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant LG Chem America for a reasonable sum of damages as will fairly and justly compensate for damages incurred, for punitive damages in such a sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

8

## COUNT 2 – NEGLIGENCE
## DEFENDANT - LG CHEM AMERICA, INC.

48.     Plaintiff adopts and re-alleges the foregoing paragraphs of this Complaint, as if fully set forth herein.

49.     Upon information and belief, LG Chem, Ltd. is the manufacturer of the Lithium Ion Battery.

50.     LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a product liability action from being commenced against Defendant LG Chem America, even to the extent Defendant LG Chem America did not play any role in the design or manufacture of the Lithium Ion Battery.

51.     Additionally, Defendant LG Chem America is familiar with lithium ion batteries such that it cannot be said that Defendant LG Chem America is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition; as such, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a products liability action as to the Lithium Ion Battery from being commenced against Defendant LG Chem America.

52.     In the ordinary course of business, the Lithium Ion Battery was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce such that it reached the State of Tennessee by the acts of Defendant LG Chem America.

53.     At the time of The Fire, the Lithium Ion Battery was used in a manner reasonable anticipated by Defendant LG Chem America.

54.     At the time of The Fire, the Lithium Ion Battery was without substantial change in the condition in which it was designed, manufactured, tested, inspected, assembled, distributed, sold and/or placed into the stream of commerce by Defendant LG Chem America.

55.     At the time of The Fire, the Lithium Ion Battery was in substantially the same condition as when it left the control of Defendant LG Chem America, except for reasonably anticipated wear and tear.

56.     Defendant LG Chem America owed a duty to the general consuming public, including the Shelter-insureds, to design, manufacture, assemble, test, market, and/or distribute the

9

Lithium Ion Battery such that it was reasonable safe for intended and/or foreseeable operation.

57. Defendant LG Chem America knew that the Lithium Ion Battery would be used without inspection for defective or unreasonably dangerous conditions and represented that the Lithium Ion Battery could be safely used and would be fit for the ordinary purposes for which it was intended.

58. Defendant LG Chem America knew that the end consumers of the Lithium Ion Battery would not and could not properly inspect the Lithium Ion Battery for defects and dangerous conditions because detection of such defects and dangers would be beyond the capabilities of ordinary consumers.

59. At the time the Lithium Ion Battery was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce, it was foreseeable to Defendant LG Chem America that it would be used along with Bissell Vacuums.

60. At the time the Lithium Ion Battery was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce by Defendant LG Chem America, Defendant LG Chem America knew or should have known that consumers who used LG Chemical (MH19896) Model INR18650MG1 lithium ion cells to power Bissell Vacuums were subject to heightened risk of real or personal property damage.

61. Notwithstanding the aforesaid duty, Defendant LG Chem America failed to exercise reasonable care and caution with respect to the Lithium Ion Battery, in one or more of the following ways:

   a) The Lithium Ion Battery was designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition in that the Lithium Ion Battery had a propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions;

   b) The Lithium Ion Battery was unreasonably dangerous and defective due to inadequate warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Lithium Ion Battery;

   c) The Lithium Ion Battery was unreasonably dangerous and defective due to the absence of warnings and/or instructions, including but not limited to warning stickers placards, written instructions, and/or proper documentation to alert users of the hazardous

10

conditions described herein and to instruct users as to the perils they were placing themselves in by using the Lithium Ion Battery; and,

d) In designing, manufacturing, selling and/or supplying the Lithium Ion Battery, when the Defendant LG Chem America knew of its propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions as well as the high probability that the Lithium Ion Battery would be used in Bissell Vacuums.

62.  As a direct and proximate result of the defective and unreasonably dangerous condition of the Lithium Ion Battery, Shelter-insureds suffered real and personal property damage.

63.  Defendant LG Chem America's conduct was performed maliciously, intentionally, fraudulently, and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant LG Chem America and others from like conduct in the future.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant LG Chem America for a reasonable sum of damages as will fairly and justly compensate for damages incurred, for punitive damages in such a sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

### COUNT 3 – BREACH OF EXPRESS WARRANTY
### DEFENDANT – LG CHEM AMERICA, INC.

64.  Plaintiff adopts and re-alleges the foregoing paragraphs of this Complaint, as if fully set forth herein.

65.  Upon information and belief, LG Chem, Ltd. is the manufacturer of the Lithium Ion Battery.

66.  LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a product liability action from being commenced against Defendant LG Chem America, even to the extent Defendant LG Chem America did not play any role in the design or manufacture of the Lithium Ion Battery.

67.  Additionally, Defendant LG Chem America is familiar with lithium ion batteries such that it cannot be said that Defendant LG Chem America is afforded no reasonable opportunity to

11

inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition; as such, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a products liability action as to the Lithium Ion Battery from being commenced against Defendant LG Chem America.

68. Defendant LG Chem America expressly warranted that that Lithium Ion Battery was of good and merchantable quality and was fit for its ordinary and intended uses and purposes.

69. Defendant LG Chem America's conduct as described herein constitutes breach of the express warranty in violation of section § 47-2-313 of the Tennessee Code since the Lithium Ion Battery designed, manufactured, and sold by Defendant LG Chem America was not merchantable at the time of sale due to Defendant LG Chem America's misbranding, concealment, non-disclosure, and failure to warn of its dangerous propensities when used in an ordinary and foreseeable manner.

70. Defendant LG Chem America breached the express warranty in the contract for the sale of the Lithium Ion Battery because the Lithium Ion Battery:

   a)   Did not pass without objection in the trade under the contract description;

   b)   Was not fit for the ordinary purposes for which it was to be used;

   c)   Was not adequately labeled; and,

   d)   Did not conform to the promises or affirmations of fact made by Defendant LG Chem America.

71. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Defendant LG Chem America, the Lithium Ion Battery utilized by the Shelter-insureds was not merchantable nor was it fir for the ordinary purposes for which such goods are used, which directly or proximately caused or contributed to cause Shelter-insureds suffered real and personal property damage.

72. Defendant LG Chem America's conduct was performed maliciously, intentionally, fraudulently, and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount

12

sufficient to punish Defendant and to deter Defendant LG Chem America and others from like conduct in the future.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant LG Chem America for a reasonable sum of damages as will fairly and justly compensate for damages incurred, for punitive damages in such a sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

### COUNT 4 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### DEFENDANT - LG CHEM AMERICA, INC.

73. Plaintiff adopts and re-alleges the foregoing paragraphs of this Complaint, as if fully set forth herein.

74. Upon information and belief, LG Chem, Ltd. is the manufacturer of the Lithium Ion Battery.

75. LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a product liability action from being commenced against Defendant LG Chem America, even to the extent Defendant LG Chem America did not play any role in the design or manufacture of the Lithium Ion Battery.

76. Additionally, Defendant LG Chem America is familiar with lithium ion batteries such that it cannot be said that Defendant LG Chem America is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition; as such, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a products liability action as to the Lithium Ion Battery from being commenced against Defendant LG Chem America.

77. The Lithium Ion Battery was a "good" within the meaning of the Uniform Commercial Code Article 2 and section § 47-2-314 of the Tennessee Code.

78. Defendant LG Chem America is, and was at all relevant times, a merchant who deals with goods similar or identical to the Lithium Ion Battery and who holds itself out as having knowledge and skill in the battery and/or electronics industry.

13

79. Defendant LG Chem America designed, marketed and/or distributed the Lithium Ion Battery, which was sold to Flextronics and/or Bissell and then sold to Shelter-insureds.

80. Defendant LG Chem America impliedly warranted that that Lithium Ion Battery was merchantable and fit for the ordinary purposes for which the Lithium Ion Battery would be used.

81. Defendant LG Chem America's conduct as described herein constitutes breach of the implied warranty of merchantability in violation of section § 47-2-314 of the Tennessee Code since the Lithium Ion Battery designed, manufactured, and sold by Defendant LG Chem America was not merchantable at the time of sale due to Defendant LG Chem America's misbranding, concealment, non-disclosure, and failure to warn of its dangerous propensities when used in an ordinary and foreseeable manner.

82. Defendant LG Chem America breached the warranty implied in the contract for the sale of the Lithium Ion Battery because the Lithium Ion Battery:

    a)    Did not pass without objection in the trade under the contract description;

    b)    Was not fit for the ordinary purposes for which it was to be used;

    c)    Was not adequately labeled; and,

    d)    Did not conform to the promises or affirmations of fact made by Defendant LG Chem America.

83. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Defendant LG Chem America, the Lithium Ion Battery utilized by the Shelter-insureds was not merchantable nor was it fir for the ordinary purposes for which such goods are used, which directly or proximately caused or contributed to cause Shelter-insureds suffered real and personal property damage.

84. Defendant LG Chem America's conduct was performed maliciously, intentionally, fraudulently, and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant LG Chem America and others from like conduct in the future.

14

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant LG Chem America for a reasonable sum of damages as will fairly and justly compensate for damages incurred, for punitive damages in such a sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

### COUNT 5 – STRICT LIABILITY
### DEFENDANT - FLEXTRONICS INTERNATIONAL USA, INC.

85. Plaintiff adopts and re-alleges the foregoing paragraphs of this Complaint, as if fully set forth herein.

86. In the ordinary course of business, the Bissell Vacuum was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the steam of commerce such that it reached the Stated of Tennessee by the acts of Defendant Flextronics.

87. At the time of The Fire, the Bissell Vacuum was used in a manner reasonably anticipated by Defendant Flextronics.

88. At the time of The Fire, the Bissell Vacuum was without substantial change in the condition in which it was designed, manufactured, tested, inspected, assembled, distributed, sold and/or placed into the stream of commerce by Defendant LG Flextronics.

89. At the time of The Fire, the Bissell Vacuum was without substantial change in the condition in which it was designed, manufactured, tested, inspected, assembled, distributed, sold and/or placed into the stream of commerce by Defendant Flextronics.

90. At the time of The Fire, the Bissell Vacuum was in substantially the same condition as when it left the control of Defendant Flextronics, except for reasonably anticipated wear and tear.

91. The Bissell Vacuum, when used in the manner recommended, intended and/or reasonably foreseeable to Defendant Flextronics, was "defective" and "unreasonably dangerous" — as those terms are defined by sections §§ 29-28-201(2) and (8) of the Tennessee Code — in one or more of the following respects:

   a) The Bissell Vacuum was designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition in that the Bissell Vacuum had a

15

propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions;

b) The Bissell Vacuum was unreasonably dangerous and defective due to inadequate warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Bissell Vacuum; and,

c) The Bissell Vacuum was unreasonably dangerous and defective due to the absence of warnings and/or instructions, including but not limited to warning stickers placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Bissell Vacuum.

92. Defendant Flextronics knew that the Bissell Vacuum would be used without inspection for defective or unreasonably dangerous conditions and represented that the Bissell Vacuum could be safely used and would be fit for the ordinary purposes for which it was intended.

93. Defendant Flextronics knew that the end consumers of the Bissell Vacuum would not and could not properly inspect the Bissell Vacuum for defects and dangerous conditions because detection of such defects and dangers would be beyond the capabilities of ordinary consumers.

94. On the date of The Fire, the Bissell Vacuum was within its "anticipated life" as defined by section § 29-28-102(1) of the Tennessee Code.

95. Technologically and commercially feasible safer alternative designs and methods of supplying battery-powered electricity existed for the Bissell Vacuum, which would have eliminated its unreasonably dangerous characteristics and propensities without seriously impairing its usefulness.

96. The Bissell Vacuum did not meet reasonable expectations of safety, failed to meet the "Consumer Expectation Test" as that term is understood under Tennessee law, and was not reasonably fit for the purposes for which it would foreseeably be used.

97. A reasonably prudent manufacturer or seller would not have put the Bissell Vacuum on the market due to its defective, unsafe and unreasonably dangerous condition.

98. Had the Bissell Vacuum not possessed the defects and unreasonably dangerous characteristics and propensities described above, the likelihood of The Fire, and the damages

resulting therefrom, would have either been eliminated or the and damages would have been less numerous, less likely, or less severe.

99. As a direct and proximate result of the defective and unreasonably dangerous condition of the Bissell Vacuum, Shelter-insureds suffered real and personal property damage.

100. Defendant Flextronics' conduct was performed maliciously, intentionally, fraudulently, and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant Flextronics and others from like conduct in the future.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant Flextronics for a reasonable sum of damages as will fairly and justly compensate for damages incurred, for punitive damages in such a sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT 6 – NEGLIGENCE
### DEFENDANT - FLEXTRONICS INTERNATIONAL USA, INC.

101. Plaintiff adopts and re-alleges the foregoing paragraphs of this Complaint, as if fully set forth herein.

102. In the ordinary course of business, the Bissell Vacuum was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce such that it reached the State of Tennessee by the acts of Defendant Flextronics.

103. At the time of The Fire, the Bissell Vacuum was used in a manner reasonable anticipated by Defendant Flextronics.

104. At the time of The Fire, the Bissell Vacuum was without substantial change in the condition in which it was designed, manufactured, tested, inspected, assembled, distributed, sold and/or placed into the stream of commerce by Defendant Flextronics.

105. At the time of The Fire, the Bissell Vacuum was in substantially the same condition as when it left the control of Defendant Flextronics, except for reasonably anticipated wear and tear.

17

106. Defendant Flextronics owed a duty to the general consuming public, including the Shelter-insureds, to design, manufacture, assemble, test, market, and/or distribute the Bissell Vacuum such that it was reasonable safe for intended and/or foreseeable operation.

107. Defendant Flextronics knew that the Bissell Vacuum would be used without inspection for defective or unreasonably dangerous conditions and represented that the Bissell Vacuum could be safely used and would be fit for the ordinary purposes for which it was intended.

108. At the time the Bissell Vacuum was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce, it was foreseeable to Defendant Flextronics the Bissell Vacuum that it would be used along with batteries such as the Lithium Ion Batteries.

109. At the time the Bissell Vacuum was designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce by Defendant Flextronics, Defendant Flextronics knew or should have known that consumers who used LG Chemical (MH19896) Model INR18650MG1 lithium ion cells to power Bissell Vacuums were subject to heightened risk of real or personal property damage.

110. Notwithstanding the aforesaid duty, Defendant Flextronics failed to exercise reasonable care and caution with respect to the Bissell Vacuum, in one or more of the following ways:

   a) The Bissell Vacuum was designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition in that the Bissell Vacuum had a propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions;

   b) The Bissell Vacuum was unreasonably dangerous and defective due to inadequate warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Bissell Vacuum;

   c) The Bissell Vacuum was unreasonably dangerous and defective due to the absence of warnings and/or instructions, including but not limited to warning stickers placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Bissell Vacuum; and,

   d) In designing, manufacturing, selling and/or supplying the Bissell Vacuum, when the Defendant Flextronics knew of its propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating

18

conditions as well as the high probability that the Lithium Ion Battery would be used in Bissell Vacuums.

111. As a direct and proximate result of the defective and unreasonably dangerous condition of the Bissell Vacuum, Shelter-insureds suffered real and personal property damage.

112. Defendant Flextronics' conduct was performed maliciously, intentionally, fraudulently, and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant Flextronics and others from like conduct in the future.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant Flextronics for a reasonable sum of damages as will fairly and justly compensate for damages incurred, for punitive damages in such a sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT 7 – BREACH OF EXPRESS WARRANTY
### DEFENDANT - FLEXTRONICS INTERNATIONAL USA, INC.

113. Plaintiff adopts and re-alleges the foregoing paragraphs of this Complaint, as if fully set forth herein.

114. The Bissell Vacuum was a "good" within the meaning of the Uniform Commercial Code Article 2 and section § 47-2-314 of the Tennessee Code.

115. Defendant Flextronics is, and was at all relevant times, a merchant who deals with goods similar or identical to the Bissell Vacuum and who holds itself out as having knowledge and skill in the battery and/or electronics industry.

116. Defendant Flextronics designed, marketed and/or distributed the Bissell Vacuum, which was sold to Bissell Homecare and/or Bissell and then sold to Shelter-insureds.

117. Defendant Flextronics expressly warranted that that the Bissell Vacuum was of good and merchantable quality and was fit for its ordinary and intended uses and purposes.

118. Defendant Flextronics' conduct as described herein constitutes breach of the express warranty in violation of section § 47-2-313 of the Tennessee Code since the Bissell Vacuum designed, manufactured, and sold by Defendant Flextronics was not merchantable at the time

19

of sale due to Defendant Flextronics' misbranding, concealment, non-disclosure, and failure to warn of its dangerous propensities when used in an ordinary and foreseeable manner.

119. Defendant Flextronics breached the express warranty in the contract for the sale of the Bissell Vacuum because the Bissell Vacuum:

    a)      Did not pass without objection in the trade under the contract description;

    b)      Was not fit for the ordinary purposes for which it was to be used;

    c)      Was not adequately labeled; and,

    d)      Did not conform to the promises or affirmations of fact made by Defendant Flextronics.

120. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Defendant Flextronics, the Bissell Vacuum utilized by the Shelter-insureds was not merchantable nor was it fir for the ordinary purposes for which such goods are used, which directly or proximately caused or contributed to cause Shelter-insureds suffered real and personal property damage.

121. Defendant Flextronics' conduct was performed maliciously, intentionally, fraudulently, and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant Flextronics and others from like conduct in the future.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant Flextronics for a reasonable sum of damages as will fairly and justly compensate for damages incurred, for punitive damages in such a sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

### COUNT 8 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### DEFENDANT - FLEXTRONICS INTERNATIONAL USA, INC.

122. Plaintiff adopts and re-alleges the foregoing paragraphs of this Complaint, as if fully set forth herein.

123. The Bissell Vacuum was a "good" within the meaning of the Uniform Commercial Code Article 2 and section § 47-2-314 of the Tennessee Code.

124. Defendant Flextronics is, and was at all relevant times, a merchant who deals with goods similar or identical to the Bissell Vacuum and who holds itself out as having knowledge and skill in the battery and/or electronics industry.

125. Defendant Flextronics designed, marketed and/or distributed the Bissell Vacuum, which was sold to Bissell Homecare and/or Bissell and then sold to Shelter-insureds.

126. Defendant Flextronics impliedly warranted that that the Bissell Vacuum was merchantable and fit for the ordinary purposes for which the Bissell Vacuum would be used.

127. Defendant Flextronics' conduct as described herein constitutes breach of the implied warranty of merchantability in violation of section § 47-2-314 of the Tennessee Code since the Bissell Vacuum designed, manufactured, and sold by Defendant Flextronics was not merchantable at the time of sale due to Defendant Flextronics' misbranding, concealment, non-disclosure, and failure to warn of its dangerous propensities when used in an ordinary and foreseeable manner.

128. Defendant Flextronics breached the warranty implied in the contract for the sale of the Bissell Vacuum because the Bissell Vacuum:

   a)     Did not pass without objection in the trade under the contract description;

   b)     Was not fit for the ordinary purposes for which it was to be used;

   c)     Was not adequately labeled; and,

   d)     Did not conform to the promises or affirmations of fact made by Defendant Flextronics.

129. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Defendant Flextronics, the Bissell Vacuum utilized by the Shelter-insureds was not merchantable nor was it fir for the ordinary purposes for which such goods are used, which directly or proximately caused or contributed to cause Shelter-insureds suffered real and personal property damage.

130. Defendant Flextronics' conduct was performed maliciously, intentionally, fraudulently, and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and to deter Defendant Flextronics and others from like conduct in the future.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant Flextronics for a reasonable sum of damages as will fairly and justly compensate for damages incurred, for punitive damages in such a sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

### COUNT 9 – STRICT LIABILITY
### DEFENDANTS - BISSELL HOMECARE, INC. AND BISSELL, INC.

131. Plaintiff adopts and re-alleges the foregoing paragraphs of this Complaint, as if fully set forth herein.

132. Upon information and belief, LG Chem, Ltd. is the manufacturer of the Lithium Ion Battery.

133. LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a product liability action from being commenced against Defendants Bissell Homecare and Bissell, even to the extent Defendants Bissell Homecare and Bissell did not play any role in the design or manufacture of the Lithium Ion Battery.

134. Moreover, since Defendants Bissell Homecare and Bissell acquire multiple batteries like the Lithium Ion Battery in one sealed package but sells individual batteries, within Bissell Homecare's and Bissell's products, to consumers outside of that packaging, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a products liability action from being commenced against Defendants Bissell Homecare and Bissell.

135. Additionally, Defendants Bissell Homecare and Bissell became familiar enough with its batteries such that it cannot be said that Defendants Bissell Homecare and Bissell are afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition; as

22

such, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a products liability action from being commenced against Defendants Bissell Homecare and Bissell.

136. Upon information and belief, the Defendants Bissell Homecare and Bissell are the manufacturers and sellers of the Bissell Vacuum.

137. In the ordinary course of business, the Lithium Ion Battery and Bissell Vacuum were distributed or sold such that it reached the State of Tennessee, or reached the end-consumer in the State of Tennessee, by the acts of Defendants Bissell Homecare and Bissell.

138. At the time of The Fire, the Lithium Ion Battery and Bissell Vacuum were used in a manner reasonably anticipated by Defendants Bissell Homecare and Bissell.

139. At the time of The Fire, the Lithium Ion Battery and Bissell Vacuum were without substantial change in the condition in which it was inspected, distributed, or sold by Defendants Bissell Homecare and Bissell.

140. At the time of The Fire, the Lithium Ion Battery and Bissell Vacuum were in substantially the same condition as when it left the control of Defendants Bissell Homecare and Bissell, except for reasonably anticipated wear and tear.

141. The Lithium Ion Battery and Bissell Vacuum, when used in the manner recommended, intended and/or reasonably foreseeable to Defendants Bissell Homecare and Bissell, was "defective" and "unreasonably dangerous" – as those terms are defined by sections §§ 29-28-201(2) and (8) of the Tennessee Code – in one or more of the following ways:

    a) The Lithium Ion Battery and Bissell Vacuum were designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition in that the Lithium Ion Battery and Bissell Vacuum had a propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions;

    b) The Lithium Ion Battery and Bissell Vacuum were unreasonably dangerous and defective due to inadequate warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Lithium Ion Battery and Bissell Vacuum;

    c) The Lithium Ion Battery and Bissell Vacuum were unreasonably dangerous and defective due to the absence of warnings and/or instructions, including but not limited to warning stickers placards, written instructions, and/or proper documentation to alert

23

users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Lithium Ion Battery and Bissell Vacuum.

142. Defendants Bissell Homecare and Bissell knew that the Lithium Ion Battery and Bissell Vacuum would be used without inspection for defective or unreasonably dangerous conditions and represented that the Lithium Ion Battery and Bissell Vacuum could be safely used and would be fit for the ordinary purposes for which it was intended.

143. Defendants Bissell Homecare and Bissell knew that the end consumers of the Lithium Ion Battery and Bissell Vacuum would not and could not properly inspect the Lithium Ion Battery or Bissell Vacuum for defects and dangerous conditions because detection of such defects and dangers would be beyond the capabilities of ordinary consumers.

144. On the date of The Fire, the Lithium Ion Battery and Bissell Vacuum were within its "anticipated life" as defined by section § 29-28-102(1) of the Tennessee Code.

145. Technologically and commercially feasible safer alternative designs and methods of supplying battery-powered electricity existed for the Lithium Ion Battery and Bissell Vacuum, which would have eliminated its unreasonably dangerous characteristics and propensities without seriously impairing its usefulness.

146. The Lithium Ion Battery and Bissell Vacuum did not meet reasonable expectations of safety, failed to meet the "Consumer Expectation Test" as that term is understood under Tennessee law, and was not reasonably fit for the purposes for which it would foreseeably be used.

147. A reasonably prudent manufacturer or seller would not have put the Lithium Ion Battery or Bissell Vacuum on the market due to its defective, unsafe and unreasonably dangerous condition.

148. Had the Lithium Ion Battery and Bissell Vacuum not possessed the defects and unreasonably dangerous characteristics and propensities described above, the likelihood of The Fire, and the damages resulting therefrom, would have either been eliminated or the and damages would have been less numerous, less likely, or less severe.

149. As a direct and proximate result of the defective and unreasonably dangerous condition of the Lithium Ion Battery and Bissell Vacuum, Shelter-insureds suffered real and personal property damage.

24

150. Defendants Bissell Homecare's and Bissell's conduct was performed maliciously, intentionally, fraudulently, and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and to deter Defendants Bissell Homecare and Bissell and others from like conduct in the future.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants Bissell Homecare and Bissell for a reasonable sum of damages as will fairly and justly compensate for damages incurred, for punitive damages in such a sum as will serve to punish Defendants and deter Defendants and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

### COUNT 10 – NEGLIGENCE
### DEFENDANTS - BISSELL HOMECARE, INC. AND BISSELL, INC.

151. Plaintiff adopts and re-alleges the foregoing paragraphs of this Complaint, as if fully set forth herein.

152. Upon information and belief, LG Chem, Ltd. is the manufacturer of the Lithium Ion Battery.

153. LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a product liability action from being commenced against Defendants Bissell Homecare and Bissell, even to the extent Defendants Bissell Homecare and Bissell did not play any role in the design or manufacture of the Lithium Ion Battery.

154. Moreover, since Defendants Bissell Homecare and Bissell acquire multiple batteries like the Lithium Ion Battery in one sealed package but sells individual batteries, within Defendants Bissell Homecare's and Bissell's products, to consumers outside of that packaging, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a products liability action from being commenced against Defendants Bissell Homecare and Bissell.

155. Additionally, Defendants Bissell Homecare and Bissell becomes familiar enough with its batteries such that it cannot be said that Defendants Bissell Homecare and Bissell are afforded no reasonable opportunity to inspect the product in such a manner which would or

should, in the exercise of reasonable care, reveal the existence of the defective condition; as such, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a products liability action from being commenced against Defendants Bissell Homecare and Bissell.

156. In the ordinary course of business, the Lithium Ion Battery and Bissell Vacuum were distributed or sold such that it reached the State of Tennessee, or reached the end-consumer in the State of Tennessee, by the acts of Defendants Bissell Homecare and Bissell.

157. At the time of The Fire, the Lithium Ion Battery and Bissell Vacuum were used in a manner reasonably anticipated by Defendants Bissell Homecare and Bissell.

158. At the time of The Fire, the Lithium Ion Battery and Bissell Vacuum were without substantial change in the condition in which it was inspected, distributed, or sold by Defendants Bissell Homecare and Bissell.

159. At the time of The Fire, the Lithium Ion Battery and Bissell Vacuum were in substantially the same condition as when it left the control of Defendants Bissell Homecare and Bissell, except for reasonably anticipated wear and tear.

160. Defendants Bissell Homecare and Bissell owed a duty to the general public, including the Shelter-insureds, to market, distribute, label, and/or warn of the Lithium Ion Battery and Bissell Vacuum such that it was reasonably safe for intended and/or foreseeable operation.

161. Defendants Bissell Homecare and Bissell knew that the Lithium Ion Battery and Bissell Vacuum would be used without inspection for defective or unreasonably dangerous conditions and represented that the Lithium Ion Battery and Bissell Vacuum could be safely used and would be fit for the ordinary purposes for which it was intended.

162. At the time the Lithium Ion Battery and Bissell Vacuum were marketed, distributed, and/or sold, it was foreseeable to Defendants Bissell Homecare and Bissell that it had the propensity to spontaneously and without warning overheat, catch fire, and continue burning under normal operating conditions.

163. At the time the Lithium Ion Battery and Bissell Vacuum were designed, manufactured, assembled, tested, marketed, distributed, sold and/or placed into the stream of commerce by Defendants Bissell Homecare and Bissell, Defendants Bissell Homecare and Bissell knew or should have known that consumers who used LG Chemical (MH19896) Model

26

INR18650MG1 lithium ion cells to power Bissell Vacuums were subject to heightened risk of real or personal property damage.

164. Notwithstanding the aforesaid duty, Defendants Bissell Homecare and Bissell failed to exercise reasonable care and caution with respect to the Lithium Ion Battery and Bissell Vacuum, in one or more of the following ways:

   a) The Lithium Ion Battery and Bissell Vacuum were designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition in that the Lithium Ion Battery and Bissell Vacuum had a propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions;

   b) The Lithium Ion Battery and Bissell Vacuum were unreasonably dangerous and defective due to inadequate warnings and/or instructions, including but not limited to warning stickers, placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Lithium Ion Battery and Bissell Vacuum;

   c) The Lithium Ion Battery and Bissell Vacuum were unreasonably dangerous and defective due to the absence of warnings and/or instructions, including but not limited to warning stickers placards, written instructions, and/or proper documentation to alert users of the hazardous conditions described herein and to instruct users as to the perils they were placing themselves in by using the Lithium Ion Battery and Bissell Vacuum; and,

   d) In designing, manufacturing, selling and/or supplying the Lithium Ion Battery and Bissell Vacuum, when the Defendants Bissell Homecare and Bissell knew of its propensity to spontaneously and without warning overheat, catch fire, and continue burning during normal and foreseeable operating conditions as well as the high probability that the Lithium Ion Battery would be used in Bissell Vacuums.

165. As a direct and proximate result of the defective and unreasonably dangerous condition of the Lithium Ion Battery and Bissell Vacuum, Shelter-insureds suffered real and personal property damage.

166. Defendants Bissell Homecare's and Bissell's conduct was performed maliciously, intentionally, fraudulently, and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and to deter Defendants Bissell Homecare and Bissell and others from like conduct in the future.

27

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants Bissell Homecare and Bissell for a reasonable sum of damages as will fairly and justly compensate for damages incurred, for punitive damages in such a sum as will serve to punish Defendants and deter Defendants and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

### COUNT 11 – BREACH OF EXPRESS WARRANTY
### DEFENDANTS - BISSELL HOMECARE, INC. AND BISSELL, INC.

167. Plaintiff adopts and re-alleges the foregoing paragraphs of this Complaint, as if fully set forth herein.

168. Upon information and belief, LG Chem, Ltd. is the manufacturer of the Lithium Ion Battery.

169. LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a product liability action from being commenced against Defendants Bissell Homecare and Bissell, even to the extent Defendants Bissell Homecare and Bissell did not play any role in the design or manufacture of the Lithium Ion Battery.

170. Moreover, since Defendants Bissell Homecare and Bissell acquires multiple batteries like the Lithium Ion Battery in one sealed package but sells individual batteries, within Bissell Homecare's and Bissell's products, to consumers outside of that packaging, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a products liability action from being commenced against Defendants Bissell Homecare and Bissell.

171. Additionally, Defendants Bissell Homecare and Bissell becomes familiar enough with its batteries such that it cannot be said that Defendants are afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition; as such, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a products liability action from being commenced against Defendants Bissell Homecare and Bissell.

172. Both the Lithium Ion Battery and Bissell Vacuum were "goods" within the meaning of the Uniform Code Article 2 and section § 47-2-314 of the Tennessee Code.

28

173. Defendants Bissell Homecare and Bissell are, and was at all relevant times, a merchant who deals with goods similar or identical to the Lithium Ion Battery and the Bissell Vacuum and holds itself out as having knowledge and skill in the battery and electronics industries.

174. Defendants Bissell Homecare and Bissell marketed, distributed, and/or sold the Lithium Ion Battery and the Bissell Vacuum then to the Shelter-insureds.

175. Defendants Bissell Homecare and Bissell expressly warranted that that the Bissell Vacuum was of good and merchantable quality and was fit for its ordinary and intended uses and purposes.

176. Defendants Bissell Homecare's and Bissell's conduct as described herein constitutes breach of the express warranty in violation of section § 47-2-313 of the Tennessee Code since the Bissell Vacuum designed, manufactured, and sold by Defendants Bissell Homecare and Bissell was not merchantable at the time of sale due to Defendant's misbranding, concealment, non-disclosure, and failure to warn of its dangerous propensities when used in an ordinary and foreseeable manner.

177. Defendants Bissell Homecare and Bissell breached the express warranty in the contract for the sale of the Bissell Vacuum because the Bissell Vacuum:

    a)      Did not pass without objection in the trade under the contract description;

    b)      Was not fit for the ordinary purposes for which it was to be used;

    c)      Was not adequately labeled; and,

    d)      Did not conform to the promises or affirmations of fact made by Defendants Bissell Homecare and Bissell.

178. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Defendants Bissell Homecare and Bissell, the Bissell Vacuum utilized by the Shelter-insureds was not merchantable nor was it fir for the ordinary purposes for which such goods are used, which directly or proximately caused or contributed to cause Shelter-insureds suffered real and personal property damage.

179. Defendants Bissell Homecare's and Bissell's conduct was performed maliciously, intentionally, fraudulently, and/or recklessly, and showed complete indifference to, or

conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and to deter Defendants Bissell Homecare and Bissell and others from like conduct in the future.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants Bissell Homecare and Bissell for a reasonable sum of damages as will fairly and justly compensate for damages incurred, for punitive damages in such a sum as will serve to punish Defendants and deter Defendants and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

### COUNT 12 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### DEFENDANTS - BISSELL HOMECARE, INC. AND BISSELL, INC.

180.  Plaintiff adopts and re-alleges the foregoing paragraphs of this Complaint, as if fully set forth herein.

181.  Upon information and belief, LG Chem, Ltd. is the manufacturer of the Lithium Ion Battery.

182.  LG Chem, Ltd. is not subject to service in the State of Tennessee nor can service be secured over LG Chem, Ltd. via Tennessee's long-arm statute; therefore, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a product liability action from being commenced against Defendants Bissell Homecare and Bissell, even to the extent Defendants Bissell Homecare and Bissell did not play any role in the design or manufacture of the Lithium Ion Battery.

183.  Moreover, since Defendants Bissell Homecare and Bissell acquire multiple batteries like the Lithium Ion Battery in one sealed package but sells individual batteries, within Bissell Homecare's and Bissell's products, to consumers outside of that packaging, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a products liability action from being commenced against Defendants Bissell Homecare and Bissell.

184.  Additionally, Defendants Bissell Homecare and Bissell became familiar enough with its batteries such that it cannot be said that Defendants Bissell Homecare and Bissell are afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition; as

such, the provisions of section § 29-28-106 of the Tennessee Code do not prevent a products liability action from being commenced against Defendants Bissell Homecare and Bissell.

185. Both the Lithium Ion Battery and Bissell Vacuum were "goods" within the meaning of the Uniform Code Article 2 and section § 47-2-314 of the Tennessee Code.

186. Defendants Bissell Homecare and Bissell are, and was at all relevant times, a merchant who deals with goods similar or identical to the Lithium Ion Battery and the Bissell Vacuum and holds itself out as having knowledge and skill in the battery and electronics industries.

187. Defendants Bissell Homecare and Bissell marketed, distributed, and/or sold the Lithium Ion Battery and the Bissell Vacuum then to the Shelter-insureds.

188. Defendants Bissell Homecare and Bissell impliedly warranted that that the Lithium Ion Battery and the Bissell Vacuum were merchantable and fit for the ordinary purposes for which the Lithium Ion Battery would be used (including being used in conjunction with each other).

189. Defendants Bissell Homecare's and Bissell's conduct as described herein constitutes breach of the implied warranty of merchantability in violation of section § 47-2-314 of the Tennessee Code since the Lithium Ion Battery and the Bissell Vacuum marketed, distributed, and/or sold by Defendants Bissell Homecare and Bissell were not merchantable at the time of sale due to Defendants Bissell Homecare's and Bissell's misbranding, concealment, non-disclosure, and failure to warn of its dangerous propensities when used in an ordinary and foreseeable manner (including being used in conjunction with each other).

190. Defendants Bissell Homecare and Bissell breached the warranty implied in the contract for the sale of the Lithium Ion Battery and the Bissell Vacuum because each:

a) Did not pass without objection in the trade under the contract description;

b) Was not fit for the ordinary purposes for which it was to be used;

c) Was not adequately labeled; and,

d) Did not conform to the promises or affirmations of fact made by Defendants Bissell Homecare and Bissell.

31

191.  As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Defendants Bissell Homecare and Bissell, the Lithium Ion Battery and the Bissell Vacuum utilized by the Shelter-insureds was not merchantable nor was they fit for the ordinary purposes for which such goods are used, which directly or proximately caused or contributed to cause Shelter-insureds suffered real and personal property damage.

192.  Defendants Bissell Homecare's and Bissell's conduct was performed maliciously, intentionally, fraudulently, and/or recklessly, and showed complete indifference to, or conscious disregard for, the safety of others, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and to deter Defendants Bissell Homecare and Bissell and others from like conduct in the future.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants Bissell Homecare and Bissell for a reasonable sum of damages as will fairly and justly compensate for damages incurred, for punitive damages in such a sum as will serve to punish Defendants and deter Defendants and others from engaging in like conduct in the future, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

## CONDITIONS PRECEDENT

193.  All conditions precedent to brining this lawsuit have been performed or waived.

## RELIEF REQUESTED

194.  Wherefore, Shelter respectfully requests that it be awarded actual damages in excess of $75,000.00 because of the defendants' actionable conduct, in addition to pre- and post-judgment interest, court costs, and any additional sums this Court deems appropriate.

## PLAINTIFF DEMANDS A TRIAL BY JURY

Dated: September 21, 2020

Respectfully submitted,

SPICER RUDSTROM, PLLC

By:   s/ Darrick L. O'Dell

      Darrick L. O'Dell (BPR 26883)
      414 Union Street, Suite 1700
      Nashville, Tennessee 37219
      Phone: 615-259-9080
      Fax: 615-259-1522
      Email: dlo@spicerfirm.com

*Attorney for Plaintiff Shelter Mutual
Insurance Company*

GALANIS, POLLACK, JACOBS, AND JOHNSON, S.C.

By:   s/ Aaron D. Plamann

      Aaron D. Plamann (WB 1055157)
      839 North Jefferson Street, Suite 200
      Milwaukee, Wisconsin 53202
      Phone: 414-271-5400
      Fax: 414-271-5571
      Email: aplamann@gpjlaw.com

*Pro Hac Vice Admission To Be Requested*

*Attorney for Plaintiff Shelter Mutual
Insurance Company*