UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| Shelter Mutual Insurance Company ) | | |
| a/s/o Freddie and Amber Hoard ) | | |
|     *Plaintiff*, ) | No. 3:20-CV-00813 | |
| ) | | |
|     v. ) | Jury Trial Demanded | |
| ) | | |
| Bissell Homecare, Inc.; ) | Judge Richardson | |
| Bissell, Inc. ) | | |
| Flextronics International USA, Inc.; ) | Magistrate Judge Frensley | |
| LG Chem America, Inc.; ) | | |
| ) | | |
|     *Defendants*. ) | | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
LG CHEM AMERICA, INC.'S MOTION TO DISMISS**

Plaintiff Shelter Mutual Insurance Company, by and through undersigned counsel, offers the following Response in Opposition to Defendant LG Chem America, Inc.'s Amended Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 23) (hereinafter "LG Chem America's Motion to Dismiss"):

### INTRODUCTION

The subject LG Chemical (MH19896) Model INR18650MG1 lithium ion cells ("Lithium Ion Battery"), that experienced exothermic failure, causing a fire that destroyed the Shelter-insureds' house, were manufactured, upon information and belief, by LG Chem, Ltd., a South Korean corporation. LG Chem, Ltd. is the parent company of Defendant LG Chem America, Inc. ("LG Chem America"). Further, upon information and belief, Defendant LG Chem America is the distributor and/or marketer of the products LG Chem, Ltd. sells in America (including the subject Lithium Ion Battery). As such, it is believed that Defendant LG Chem America distributed and/or

1

marketed the subject battery in such a way that was purposefully directed at the State of Tennessee, such that Defendant LG Chem America should reasonably anticipate being haled into court here.

In order to provide proof of the above, Plaintiff will need to issue jurisdictional discovery and may even need to depose the corporate representative(s) of LG Chem America. As such, Plaintiff requests that the Court postpone ruling on Defendant's Amended Motion to Dismiss for Lack of Personal Jurisdiction until after the jurisdictional facts are known by issuing an Order allowing 60 days to conduct said jurisdictional discovery. If proof is available, then this Court's exercise of personal specific jurisdiction over Defendant LG Chem America is proper and LG Chem America's Amended Motion to Dismiss for Lack of Personal Jurisdiction should be denied.

## ARGUMENT AND AUTHORITY

The battery at issue in this case is consists of LG Chemical (MH19896) Model INR18650MG1 lithium ion cells. (Pl.'s Compl., ¶ 4). In past cases, LG Chem, Ltd. has admitted that it manufactures 18650 lithium-ion batteries. (See **Ex. A**, Deposition of LG Chem, Ltd.'s Corporate Representative, Joon Young Shin, p. 55, ll. 11-15; *see also id.* at pp. 24-25, ll. 15-3). Moreover, as to the subject battery specifically, Plaintiff believes that the battery at issue in this case was, in fact, manufactured by LG Chem, Ltd.

LG Chem America is connected to LG Chem, Ltd. via a marketing and distribution relationship. LG Chem, Ltd.'s website lists LG Chem America, Inc. as a "[m]arketing [s]ubsidiar[y]" in "America" as seen in this screenshot:

2



# Global Network

Korea (HQ)   Asia   Europe   **America**



USA (4)   Brazil (1)   Mexico (1)

— Research Center   — Marketing Subsidiaries   — Manufacturing Plants   — Representative Offices   — Service Provider

### LG NanoH2O, Inc.
Tel. 1-424-218-4000
21250 Hawthorne Blvd., Suite 330 Torrance, CA 90503 USA

Major product
RO (Reverse Osmosis)

### LG Chem America, Inc.
Tel. 1-404-400-6101
3475 Piedmont Rd NE, Suite 1200, Atlanta, GA 30305

Major product
ABS/SAN, SAP, Rubbers &

### Uniseal, Inc.
Tel. 1-812-463-5230
1014 E. Uhlhorn St. Evansville, IN 47710, USA

Major product
Sealant

### LG Chem Life Sciences Innovation Center, Inc.
Tel. 1-617-829-9729
139 Main St. Suite 201, Cambridge, MA, 02142

3

(*See* https://www.lgchem.com/company/company-information/global-network/overseas-corporation/america, attached hereto as **Ex. B**). Nothing in the website limits the products that LG Chem America markets for its parent company. Plaintiff believes that after conducting jurisdictional discovery, definitive evidence of this relationship between LG Chem America and LG Chem, Ltd. will be presented.

The only actual dispute is whether Defendant LG Chem America distributed and/or marketed the subject battery in such a way that was purposefully directed[1] at the State of Tennessee, such that Defendant LG Chem America should reasonably anticipate being haled into court here.[2] Plaintiff believes that jurisdictional discovery will provide proof of this fact.

Plaintiff already has the following evidence showing that the Court has personal jurisdiction over LG Chem America: (1) the subject battery, manufactured by LG Chem Ltd. was sold in Tennessee and injured a Tennessee citizen in Tennessee; (2) LG Chem America is a wholly owned subsidiary of LG Chem Ltd., which markets and distributes its parent's products; and (3) LG Chem America currently has designated a Tennessee Registered Agent for service of process in Tennessee. (See https://tnbear.tn.gov/Ecommerce/FilingSearch.aspx, attached hereto as **Ex. C**).

However, the fact that Plaintiff cannot yet point to additional evidence is not proof that more evidence does not exist. Plaintiff has not yet issued discovery to Defendant LG Chemical America (which is precisely why Plaintiff is requesting time to do so). In fact, Defendant LG Chem

---

[1] *See S & S Screw Mach. Co. v. Cosa Corp.*, 647 F.Supp. 600, 607 (M.D.Tenn.1986) ("The modern approach to in personam jurisdiction . . . is based on the protection the due process clause provides to an individual's liberty interest in having 'fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign.' *Burger King*, 471 U.S. at 472 In a specific jurisdiction case, a defendant has 'fair warning' if he has 'purposefully directed' his activities at residents of the forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 801, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).").

[2] *See id.* ("Crucial to the inquiry is that the defendant's conduct and connection with the forum state be such that it should 'reasonably anticipate being haled into court there.' ") (citing *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567).

America was just served on October 7, 2020 (*See* **Ex. D**, Affidavit of Service for LG Chem America ((Docket No. 11))). Furthermore, pursuant to the Initial Case Management Order (Docket No. 29) dated December 1, 2020, the deadline for the Plaintiff to file a motion to amend the pleadings is August 2, 2021. As such, it would be premature for this Court to grant Defendant LG Chem America's Motion to Dismiss at this stage.

Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state. *Bird v. Parsons,* 289 F.3d 865, 873 (6th Cir. 2002). Specific jurisdiction exists where the litigation is derived from obligations that "arise out of or are connected with the [company's] activities within the state." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).

The Sixth Circuit has adopted the "stream of commerce plus" test to determine if personal jurisdiction exists over a defendant. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 480 (6th Cir. 2003). Under this test, something more than simply placing the product into the stream of commerce is necessary, but sufficient minimum contacts can be found through actions of a defendant purposefully directed toward the Forum State. *Bridgeport Music*, 327 F.3d 472 at 479; *Asahi Metal Industry Company, Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987). Such actions may include, but are not limited to, advertising in the forum state, establishing channels for providing regular advice to customers in the Forum State, or marketing a product through a distributor who has agreed to serve as the sales agent in the Forum State. *Asahi*, 480 U.S. at 112. Factors Courts should consider include, the defendant's direction or control over the flow of the product into the forum; the quantity of the defendant's particular product regularly flowing into the forum; and the distinctive features of the forum that connect it with the product in question. *One Media IP Ltd. v. S.A.A.R., SrL.*, 122 F.Supp.3d 705, 217 (M.D. Tenn. 2015).

5

Importantly, a plaintiff can demonstrate contacts with the forum state by establishing the defendant made a "deliberate decision" to distribute its product throughout all 50 states. *Tobin v. Astra Pharm. Prod., Inc.* 993 F.2d 528 (6th Cir. 1993). In *Tobin*, a Dutch pharmaceutical company "sought out and negotiated" a licensing agreement with co-defendants. Under that agreement, one of the co-defendants was to distribute the Dutch pharmaceutical company's drug throughout the United States. 993 F.2d 528 at 543. The Court reasoned that the negotiated contract created "something more than mere awareness that the stream of commerce will sweep the product into the forum state." *Id.*, *citing Asahi*, 480 U.S. at 543. Duphar made a deliberate decision to market its product in all 50 states, including Kentucky, the forum State. *Id.*

In *Bridgeport Music*, the Court found, similar to *Tobin*, the defendant did nothing in particular to target Tennessee distinguishable from any other State. *Bridgeport Music*, 327 F.2d at 483. Nevertheless, because the defendant deliberately targeted all 50 states, a "prima facie purposeful availment finding" was warranted. *Id.*

When a motion to dismiss has been filed for lack of personal jurisdiction, "the court may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dean v. Motel 6 Operating LP*, 134 F.3d 1269, 1271-72 (6th Cir. 1998) (quoting *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (quotation marks omitted)). If the court does not hold an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction in its pleadings and affidavits, which must be considered in the light most favorable to the plaintiff. *Id.* (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).

Plaintiff believes that, after conducting jurisdictional discovery, there will be proof that Defendant LG Chem America's activities regarding the lithium batteries at issue were directed at

and in Tennessee. Regardless of the jurisdictional discovery, Plaintiff also wants to make the Court aware of the deficiencies in the arguments Defendant LG Chem America makes in its Motion. The Motion cites to *Bristol-Myers* claiming that "[w]hat is needed – and what is missing here [in order to establish personal specific jurisdiction] – is a connection between the forum and the specific claims at issue." (*See* Specially-Appearing Defendant LG Chem America, Inc.'s Amended Memorandum of Law in Support of its Motion to Dismiss for Lack of Personal Jurisdiction, p. 10). In *Bristol-Myers*, this was clearly the case since:

> the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California . . . . What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017). Thus, even after all the evidence was presented, personal jurisdiction was lacking in *Bristol-Myers*. 137 S. Ct. 1783-84.

Here, though, the facts are that Plaintiff's insured, Freddie Hoard, did purchase the subject battery in Tennessee (see **Ex. E**, subject battery Purchase Receipt), he did use the subject battery in Tennessee (as evidenced by the fact that he lived in Tennessee), and he was, in fact, injured by the subject battery which caused the fire and property damage in Tennessee. *Bristol-Myers* is simply not on point. Furthermore, in *Bristol-Myers* the plaintiffs were allowed to and had already conducted jurisdictional discovery and, after such discovery, could not meet their burden.

In light of these discrepancies, the holding in *Bristol-Myers* favors jurisdiction, so long as Plaintiff can show that LG Chem America purposefully availed itself of the protection of Tennessee's laws or the benefits of doing business there. In any event, the holding in *Bristol-Myers* supports at least granting jurisdictional discovery, which Plaintiff requests from the Court.

7

The *Bristol-Myers* Court relied on *World–Wide Volkswagen Corp. v. Woodson*, 100 S.Ct. 559 (1980), which found "no personal jurisdiction in Oklahoma because the defendant 'carr[ied] on no activity whatsoever in Oklahoma' and dismissing 'the fortuitous circumstance that a single Audi automobile, sold [by defendants] in New York to New York residents, happened to suffer an accident while passing through Oklahoma' as an 'isolated occurrence'." *Bristol-Myers*, 137 S. Ct. at 1782 (*citing World–Wide Volkswagen*, 100 S. Ct. at 566).

Plaintiff expects that the facts in this case will be different than those in *World-Wide Volkswagen*. In *World-Wide Volkswagen*, the Court acknowledged the following:

> if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

100 S. Ct. at 567. Since the Plaintiff has evidence that the subject battery was "the source of injury to its owner," all that is left to discover is whether it can be said that the injury "arises from the efforts of the . . . distributor to serve directly or indirectly, the market for its product in [Tennessee]." *Id*.

In fact, Tennessee's district courts have already held in favor of jurisdiction on facts similar to those that Plaintiff expects to prove:

> The Court thus rejects as inapplicable Gildemeister's reliance upon *World-Wide Volkswagen* for the proposition that its amenability to suit "does not travel with the chattel" it manufactures. Gildemeister is far more than a passive party whose only connection with the forum resulted from the unilateral activity of another . . . . Gildemeister's relationship to Cosa in the chain of distribution, coupled with its ongoing awareness of the sales by Cosa to S & S, clearly distinguishes it from the regional auto dealers in *World-Wide Volkswagen* . . . who were haled into an Oklahoma court due to the "fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer a accident while passing through Oklahoma." [citation omitted]. Gildemeister was in a position to devise, shape, and monitor its American distribution system by virtue of its exclusive agency contract with Cosa. Thus positioned, Gildemeister can be said to

8

>have purposefully included Tennessee in the market it chose to expand and exploit for its products.

*S & S Screw*, 647 F.Supp. at 609. The *S & S Screw* Court further stated that:

> even if Gildemeister had lacked awareness of, and direct participation in, Cosa's series of sales to S & S, the company's intention to exploit the American market, as executed by the agency contract with Cosa, suffices by itself to support an alternative ground for the exercise here of personal jurisdiction. Speaking in dictum not of the regional dealers but of the German manufacturer Audi and its national importer, Volkswagen of America, Inc., the *World-Wide Volkswagen* court said:
>
>> "if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id*. (quoting *World-Wide Volkswagen, 444 U.S. at 297-98*).

## **Defendant's Arguments Highlight the Need for More Information**

Given that backdrop, Defendant's own arguments in its Motion to Dismiss make clear that evidence, of a possible intention to exploit Tennessee's market, may be discoverable. In other words, by looking not only at what Defendant affirmatively states in its Motion to Dismiss and Affidavit, but also at what it does not state, it becomes apparent that Plaintiff's request for jurisdictional discovery here will be worthwhile. Defendant LG Chem America knows whether it purposefully causes their products to be marketed, distributed, sold, and used by residents of Tennessee, either directly or indirectly.

What Defendant LG Chem America did not argue is important. For example, in paragraph 10 of its Affidavit, LG Chem America says that it "***primarily*** sells and distributes sells and

9

distributes various petrochemical materials and products . . . . [LG Chem America] does not have any manufacturing plants, and it ***focuses on sales and distribution*** only." (*See* Declaration of Hyunsoo Kim, Ex. A to Specially-Appearing Defendant LG Chem America, Inc.'s Amended Memorandum of Law in Support of its Motion to Dismiss for Lack of Personal Jurisdiction, p. 10, emphasis added). In paragraph 11 of its Affidavit, LG Chem America says the "lithium-ion battery cell referred to by Plaintiff could not have been ***manufactured*** by [LG Chem America]. (*Id.*, p.11 emphasis added.) Further, in paragraph 14 of its Affidavit LG Chem America says it "did not sell or distribute lithium-ion batteries to Bissell Homecare, Inc., Bissell, Inc. or Flextronics International USA, Inc." (*Id.*, p.14, emphasis added.)

What the Affidavit does not declare is that LG Chem America did not market the subject battery. Furthermore, the Affidavit does not say that LG Chem America did not sell or distribute the subject battery to another party, unknown to the Plaintiff. If this were true, one would expect LG Chem America to have stated as much. In fact, had LG Chem America been able to do so it would have attested that it has never sold, marketed, or distributed the subject battery to anyone. The fact that LG Chem America attested only that it had not manufactured the subject battery is explained only by the fact that LG Chem America knows that it sold, marketed, or distributed the subject battery.

Similarly, in paragraph 16 of its Affidavit, LG Chem America says that its "sales in Tennessee are exclusively limited to petrochemical materials and products." (*Id.*, p.16.) However, what its Affidavit does not say is that its sales to distributors outside of Tennessee are also exclusively limited to petrochemical materials and products. Without this being true, LG Chem America is still vulnerable to the possibility that it sold, marketed, or distributed the subject battery

10

outside of Tennessee with the intention and knowledge that the battery would eventually be sold to a resident of Tennessee.

Paragraph 12 of LG Chem America's Affidavit states, quite specifically, that it "has never sold, marketed, or distributed any lithium-ion batteries ***for use by individual consumers as standalone, removable, rechargeable batteries with a Bissell Bolt Lithium Pet Cordless Bagless Stick Vacuum***." (*Id.*, p.12, emphasis added.) LG Chem America specifically fails to state that it wasn't involved with the subject battery in any way, instead LG Chem America merely says that it didn't sell, market, or distribute the subject battery *for use by individual consumers as standalone, removable, rechargeable batteries with a Bissell Bolt Lithium Pet Cordless Bagless Stick Vacuum*.

Given the specificity of LG Chem America's Affidavit, the things that it fails to say are, indeed, numerous; however, most notable among them is the fact that LG Chem America's Affidavit does not say that it did not sell, distribute, or market the subject battery to any other corporation, such as the other defendants in this lawsuit.

Further, the Affidavit fails to state that LG Chem America has never authorized anybody else to sell, market, or distribute lithium ion power cells "for use by individual consumers as standalone, removable, rechargeable batteries." This raises a relevant question that may be answered in discovery: has LG Chem America ever authorized anybody to sell, market, or distribute the subject battery.

Finally, in paragraph 19 of its Affidavit, LG Chem America says it "has never distributed or sold any lithium-ion battery cells in Tennessee." (*Id.*, p.19, emphasis added.) However, as may be deduced by now, what this does not say is that LG Chem America never did those things outside

11

of Tennessee with the intention that the batteries would or could ultimately be sold to Tennessee residents.

## CONCLUSION

As can be seen, it is possible, and Plaintiff believes likely, that this Court has personal jurisdiction over Defendant LG Chem America. Nothing in the Defendant's Motion or Affidavit affirmatively proves this Court's lack of personal jurisdiction. At most, the statements made therein highlight the need for more jurisdictional information, which is precisely why Plaintiff is requesting the same.

**WHEREFORE**, Plaintiff requests that this Court enter an Order: (1) postponing a decision on Defendant LG Chem America, Inc.'s Motion to Dismiss until after proper jurisdictional discovery has been had, (2) allowing Plaintiff 60 days to conduct such discovery, and (3) for such other and further relief as the Court may deem proper under the premises.

Dated: December 7, 2020

                    Respectfully submitted,

                    SPICER RUDSTROM, PLLC

                    By: _s/ Darrick Lee O'Dell_
                          Darrick Lee O'Dell (TBA 26883)
                          414 Union Street, Suite 1700
                          Nashville, Tennessee 37219
                          Phone: 615-259-9080
                          Fax: 615-259-1522
                          Email: dlo@spicerfirm.com

                          *Attorney for Plaintiff Shelter Mutual*
                          *Insurance Company*

GALANIS, POLLACK, JACOBS AND JOHNSON, S.C.

By: _s/ Aaron D. Plamann_____
    Aaron D. Plamann (WB 1055157)
    839 North Jefferson Street, Suite 200
    Milwaukee, Wisconsin 53202
    Phone: 414-271-5400
    Fax: 414-271-5571
    Email: aplamann@gpjlaw.com

*Admitted Pro Hac Vice*

*Attorney for Plaintiff Shelter Mutual Insurance Company*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 7, 2020, a true and correct copy of the foregoing has been filed with the Clerk of the United States District Court for the Middle District of Tennessee using the CM/ECF system. The Court's CM/ECF system will send an email notification of the foregoing filing to the following parties and counsel of record who are registered with the Court's CM/ECF system.

Steven Douglas Parman
Watkins, McGugin, McNeilly & Rowan
214 Second Avenue, N Suite 300
Nashville, TN 37201
(615) 255-2191
Email: Steve@watkinsmcneilly.com
*Counsel for Bissell Homecare, Inc. and Bissell, Inc.*

William S. Walton
Butler Snow LLP (Nashville)
The Pinnacle at Symphony Place
150 Third Avenue South Suite 1600
Nashville, TN 37201
(615) 651-6717
Email: Bill.Walton@butlersnow.com
*Counsel for Flextronics International USA, Inc.*

Joseph R. Wheeler
Mary E. Stoner
Cornelius & Collins, LLP
511 Union Street Suite 1500, P O Box 190695
Nashville, TN 37219-0695
(615) 244-1440
Email:  Jrwheeler@cornelius-Collins.com
            Mestoner@cclawtn.com

*Counsel for LG Chem America, Inc.*

By:    s/ Aaron D. Plamann